# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LYDELL WASHINGTON,**

        **Plaintiff,**

**v.**                                            **Case No. 22-CV-675**

**JAY VAN LANEN,**

        **Defendant.**

## DECISION AND ORDER

Plaintiff Lydell Washington, who is representing himself and confined at the Wisconsin Secure Program Facility, brings this lawsuit under 42 U.S.C. § 1983. Washington was allowed to proceed on an Eighth Amendment failure to protect claim against defendant Jay Van Lanen for allegedly failing to separate Washington from his suicidal and homicidal cellmate, resulting in injuries to Washington. Washington filed a motion for summary judgment (ECF No. 30.) That motion is fully briefed and ready for resolution. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 24. 25.)

# FACTS

*Van Lanen's Version of Events*

On August 11, 2020[1], at approximately 10:00 p.m., non-defendant Sgt. Brunner called Van Lanen, a Captain at Green Bay Correctional Institution (GBCI), to cell F19, Washington's cell. (ECF No. 36, ¶¶ 2-3.) Brunner informed Van Lanen that Washington's cell mate, Madison Momani, wanted to get out of his cell away from Washington for a while. (*Id.*, ¶ 3.) Before Brunner called Van Lanen to the cell, Momani had grabbed a razor and threatened to take it apart. (*Id.*, ¶ 4.) He also asked to speak to a supervisor, which is why Brunner called Van Lanen. (*Id.*)

When Van Lanen arrived at the cell, he noticed that both Momani and Washington were calm. (ECF No. 36 ¶ 5.) Momani told Van Lanen that he was "going through some things" and was nervous about his pending release from prison. (*Id.*) Van Lanen asked Momani if he could wait until the morning when he could talk to Psychological Services Unit (PSU). (*Id.*) Momani agreed. (*Id.*) Van Lanen also asked Momani to give him the razor he was holding, which he did. (*Id.*, ¶ 6.) Van Lanen asked Momani if he had any additional razors, and Momani said he did not. (*Id.*) Van Lanen asked both Momani and Washington if they were okay with remaining together in the cell overnight and both said they were. (*Id.*, ¶ 9.) Van Lanen also told Momani that, if he changed his mind during the night, he could ask the staff to place him in clinical observation. (*Id.*, ¶ 8.) Van Lanen asserts that Momani never mentioned

---

[1] Washington has the date as August 12, 2020, but because it was late in the evening, it appears the relevant events actually started on August 11. (ECF No. 32, ¶ 1.)

anything about hurting himself or hurting Washington. (*Id.*, ¶ 7.) Van Lanen did not believe that Momani posed a threat to himself or Washington at that time. (*Id.*, ¶ 11.)

*Washington's Version of Events*

Washington states that he and Momani had been having problems rooming together, and Momani began threatening him with a razor because "he wanted to be in a single cell by himself." (ECF No. 32, ¶ 1.) According to Washington, Momani stopped non-defendant C.O. Shortsize and told him to get the sergeant on duty because he was feeling homicidal and suicidal. (*Id.*, ¶ 2.) Shortsize called Brunner to come to Washington and Momani's cell. (*Id.*, ¶3.) When Brunner arrived, Momani told him that he was tired of having a cellmate and wanted to be "taken to the hole." (*Id.*, ¶ 4.) He then went to the back of the cell, got out a razor blade, and began taking it apart. (*Id.*, ¶ 5) Momani told Brunner, "When I get these razor blades out, I'm going to cut somebody. It could be me or my celly." (*Id.*)

Brunner then called for Van Lanen and, while they were waiting for Van Lanen to arrive, Momani said, "somebody will be cut the fuck up." (ECF No. 32, ¶ 6.) When Van Lanen arrived, Momani stated, "I'm not in the right state of mind right now and I need to be taken out of this cell because if I'm not taken out of this cell somebody will be cut with this razor because I'm homicidal and suicidal." (*Id.*, ¶ 7.) Van Lanen ordered Momani to give up the razor and told him that someone from PSU would deal with Momani's issues in the morning, (*Id.*, ¶ 8.) Momani gave Van Lanen the razor in his hand but told him, "I can't promise you nothing because I'm not in the right state of mind and have no control over my actions. But I'll see what I can do." (*Id.*, ¶ 9.) Van

3

Lanen then asked Momani if he had any more razors in the cell, to which Momani said he did. (*Id.*, ¶ 10.) Washington states Van Lanen did not confiscate those razors. (*Id.*) Instead, he again asked Momani if he would be okay until he could see PSU the next morning, and Momani said he would try. (*Id.*) Van Lanen then left the cell. (*Id.*, ¶ 11.)

A few hours later, Momani attacked Washington with a razor, causing Washington to sustain 11 cuts on his body. (ECF No. 32, ¶¶ 12, 18.) Momani also kneed Washington and punched him in the head. (*Id.*, ¶ 12.) Non-defendant C.O. Beavens responded to Washington's call for help and escorted Momani to segregation. (*Id.*, ¶¶ 13-14.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof

4

at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Washington claims that Van Lanen violated his Eighth Amendment rights when he failed to protect him from Momani's attack. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To demonstrate an Eighth Amendment claim against an official for failing to protect him, a plaintiff must show "the official knows of and disregards an excessive risk of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004.)

Here, there is a genuine issue of material fact as to whether Van Lanen actually knew that Momani posed an imminent threat to Washington. Washington states that Momani told Van Lanen that he was homicidal and suicidal and would harm either himself or others if he did not get out of his cell. Van Lanen states that Momani never mentioned anything about harming himself or Washington and that both Momani and Washington were comfortable remaining in the cell overnight. Washington also states that Van Lanen knew Momani had additional razors, whereas Van Lanen asserts that Momani told him he did not have any more razors. Taking the facts in the light most favorable to Van Lanen (the non-moving party), a reasonable jury could conclude that he was unaware of an excessive risk to Washington's health and safety.

Therefore, Washington's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Washington's motion for summary judgment is denied. Because the case survives summary judgment, the court will schedule a telephonic conference to discuss further proceedings.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Washington's motion for summary judgment (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that a telephonic status conference be scheduled to discuss next steps.

Dated at Milwaukee, Wisconsin this 28th day of April, 2023.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge